UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

                Plaintiff,

v.                                    Criminal Case No. 14-20191
                                    Honorable Linda V. Parker

ERVIN ALLEN,

                Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255; HIS MOTIONS FOR COUNSEL, TRANSCRIPTS AND INVESTIGATIVE REPORTS AND TO FILE AMENDED MOTIONS AND DENYING DEFENDANT A CERTIFICATE OF APPEALABILITY

On May 5, 2015, Defendant Ervin Allen ("Defendant") pleaded guilty pursuant to a Rule 11 plea agreement to two counts of a Superseding Indictment charging him with the use of a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c) and Hobbs Act robbery in violation of 18 U.S.C. §1951. In accordance with the plea agreement, the Court sentenced Defendant to a term of imprisonment of 228 months on October 27, 2015. The matter is presently before the Court on Defendant's motion and amended motion to vacate his sentence under 28 U.S.C. § 2255 (ECF Nos. 58, 68), which are fully briefed. (ECF Nos. 63, 64, 71, 72.) Defendant has filed several additional motions for leave to

amend his motion (ECF Nos. 73-78), as well as motions for the appointment of counsel (ECF Nos. 50, 72) and a motion for transcripts and investigative reports (ECF No. 53).

### Factual and Procedural Background

The Government initially charged Defendant in a January 13, 2014 Complaint with four counts of violating the Hobbs Act and three counts of using a firearm during and in relation to a crime of violence.  (ECF No. 1.)  The charges arose from robberies of various convenience food stores, a pharmacy, and a check cashing store in November and December 2013 and January 2014.  A federal grand jury issued an Indictment on April 2, 2014 (ECF No. 11), and a Superseding Indictment was entered on March 18, 2015, charging Defendant with five counts of using a firearm during and in relation to a crime of violence and six Hobbs Act violations.  (ECF No. 34.)

On July 2, 2014, the Honorable Terrance Berg (to whom the case was then-assigned) entered a stipulated order allowing Defendant to obtain an independent expert to conduct a neuropsychological examination to explore a possible mental health related defense.  (ECF No. 17.)  Defendant claimed that as a result of a serious head injury on or about July 14, 2013, he suffered from global amnesia from the events that occurred between November 21, 2013 (the date of the first robbery) to January 2, 2014 (the date of his final robbery, arrest, and initial

confession).  (*See* ECF No. 35 at Pg ID 126.)  Defendant intended to introduce this evidence in support of a diminished capacity defense at trial.  (*Id.*)

After a neuropsychologist examined Defendant and submitted his report, Defendant's counsel requested a competency exam.  Following that exam and a competency hearing on January 22, 2015, Judge Berg held that Defendant was competent to stand trial.  (ECF No. 27.)  The Government thereafter moved to exclude Defendant's expert evidence at trial, which this Court denied after the matter was reassigned.  (ECF No. 38.)  The Court also granted the Government's request to have its own expert examine Defendant.  (*Id.*)

On May 5, 2015, Defendant pleaded guilty pursuant to a Rule 11 Plea Agreement to two counts of the Superseding Indictment: Count One charging him with use of a firearm during and in relation to a crime of violence under 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii), and Count Two charging him with violating the Hobbs Act, 18 U.S.C. § 1951.  The factual basis for Defendant's plea is set forth in the agreement (*see* Plea Agreement at 3, ECF No. 41 at Pg ID 177.)  These facts included that during the January 2, 2014 robbery of a Check 'n Go in Davison, Michigan, Defendant pointed a firearm at the back of a customer's head and demanded money from an employee.  (*Id.*)  Defendant further agreed that he committed robberies on five additional occasions and brandished a weapon at employees each time.  (*Id.* at 3-5, Pg ID 177-79.)  During one robbery, Defendant

pointed a firearm at a gas station clerk and told him, "I am going to fucking kill you" and "you are going to die at work." (*Id.* at 4, Pg ID 178.)

The Plea Agreement reflects that Defendant's sentencing guidelines range was 97-121 months on Count Two, with a consecutive 84 months on Count One. (*Id.*) The parties agreed to a sentence of 228 months (19 years). (*Id.* at 7, Pg ID 181.) The agreement includes the following language:

> ***defendant is stipulating to a sentence of 144 months on count two, which he understands to be consecutive to the sentence on count one. Defendant understands that he is stipulating to a total sentence of 19 years (228 months). Defendant understands that this sentence is above the sentencing guideline range for count two, but that the stipulated sentence is the result of the incorporation of the facts of the relevant conduct described … above. Defendant has negotiated and agreed upon this term of imprisonment in order to avoid the imposition of additional mandatory terms of imprisonment based on additional violations of 18 U.S.C. § 924(c). Based on his stipulated relevant conduct, defendant agrees that the sentence of 228 months is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2).***

(*Id.* (emphasis in original).)

At the plea hearing, Defendant stated under oath that he was voluntarily waiving certain rights by pleading guilty. (*See* Hr'g Tr., ECF No. 61.) He acknowledged receiving and signing the Rule 11 Plea Agreement. (*Id.* at 14, Pg ID 313.) Defendant also stated that he agreed to the terms of the plea agreement as set forth by the prosecutor on the record, including the factual basis for his guilt on Counts One and Two, the relevant conduct, and that his sentence "may not be more

4

or less than 228 months, or 19 years." (*Id*. at 18, Pg ID 317.)  The Court specifically asked Defendant if the description of how he conducted the offenses was an accurate recitation of what happened, and he responded "Yes."  (*Id.* at 23, Pg ID 322.)

On October 27, 2015, the Court sentenced Defendant to a term of imprisonment of 84 months on Count 1, to be served consecutively to a term of imprisonment of 144 months on Count 2.  (ECF No. 47.)  The Court entered its Judgment on November 5, 2015.  (*Id*.)  Defendant did not file a direct appeal.

On November 15, 2016, Defendant filed a motion to vacate his sentence which lacked a supporting brief (ECF No. 48), a motion for the appointment of counsel (ECF No. 50), a motion for extension of time to file his § 2255 motion (ECF No. 52), and a motion for transcripts and investigative reports.  (ECF No. 53.)  The Court granted Defendant's request for more time to file his § 2255, and he filed the motion on January 30, 2017.  (ECF No. 58.)

In his initial § 2255 motion, Defendant claims that his trial counsel provided ineffective assistance by: (a) failing to file a motion to suppress his confessions; (b) agreeing to adjourn the preliminary examination without his consent or knowledge; (c) "stipulating to a plea [he] previously said [he] did not want;" and (d) failing to properly inform him of the consequences of his plea agreement and the rights being waived and incorrectly informing him that his sentence could be departed

from.  (*Id.*)  Specifically as to Defendant's third and fourth grounds for relief, he claims his trial counsel: (1) informed him that he would receive a downward departure for medical and psychiatric reasons; (2) did not make him aware that he was waiving his appeal rights and the significance of doing so; and (3) did not make him aware that the plea agreement removed the judge's discretion to modify his sentence.  Defendant also argues in the motion that his confessions were involuntary, the warrant to search his home lacked probable cause, and the affidavit in support of the search warrant contained false statements.  (*Id.*)

Defendant thereafter moved and was granted leave to file an amended motion (ECF Nos. 66, 67), which he filed on June 6, 2018.  (ECF No. 68.)  In his amended motion, Defendant argues that his conviction can no longer be considered a "crime of violence" under the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  Defendant maintains that his conviction under § 924 is now invalid.

Between February 11 and July 3, 2019, Defendant filed three additional motions seeking to amend his § 2255 petition.  (ECF Nos. 73-78.)  In each proposed amended petition, Defendant claims that the amendment is intended to "restate or clarify" claims presented in ground four of his initial motion.  In Defendant's first two proposed amended motions, he raises several challenges to his sentence, which he claims his counsel was ineffective for not raising.

6

Specifically, in his proposed amended petition filed February 11, 2019, and the first proposed amended petition he filed on July 3, 2019, Defendant contends that counsel was ineffective in not challenging the grouping of his § 924(c) counts. (ECF Nos. 74, 76.)  In his final proposed amended motion, also filed on July 3, 2019, Defendant adds several factual details in support of his challenges to his arrest, the voluntariness of his confession, and the affidavit supporting the search of his home.  (ECF No. 78.)

### Defendant's Requested Amendments

Defendant's motions to amend his § 2255 motions are governed by Rule 15 of the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 2242; *see also* Rule 12 of the Federal Rules Governing Section 2255 Proceedings in the United States District Courts. Rule 15 provides that a court should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless, the Supreme Court has instructed that leave to amend should be denied when, among other reasons, the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citation omitted).

An attempt to amend a § 2255 motion is futile if the amendment is barred by the one-year statute of limitations established by the Antiterrorism and Effective

Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255(f)(1).  *See Oleson v. United States,* 27 F. App'x 566, 570 (6th Cir. 2001).  An amendment is barred by AEDPA's one-year limitations period when it is untimely and does not "relate back" to a timely original § 2255 motion.  *See Mayle v. Felix*, 545 U.S. 644, 650 (2005); *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016); *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008).

> Under AEDPA, the one-year limitations period runs from the latest of:
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*  Only subsection one applies to the grounds asserted in Defendant's proposed amended motions.  In other words, an impediment did not prevent Defendant from previously raising the grounds asserted and none of those grounds are based on a right newly recognized by the Supreme Court or facts Defendant recently discovered.

The Judgment in this case was entered on November 5, 2015.  Defendant had fourteen days to directly appeal his convictions and sentence.  *See* Fed. App. R. 4(b)(1)(A).  Defendant did not file a direct appeal.  His conviction therefore became final when the fourteen-day period to file an appeal expired on November 19, 2015.  *See Gillis v. United States*, 729 F. 3d 641, 644 (6th Cir. 2013) (explaining that "[a] conviction becomes final when the time for a direct appeal expires and no appeal has been filed …").  AEDPA's one-year statute of limitations to file a § 2255 motion began to run the next day, and it expired on November 20, 2016.  Defendant's proposed amended § 2255 motions were filed well beyond this date.

Therefore, the proposed amendments may be considered only if they relate back to Defendant's initial § 2255 motion.  "[P]leading amendments relate back to the date of the original pleading when the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." ' *Mayle v. Felix*, 546 U.S. 644, 656 (2005) (quoting Fed. R. Civ. P. 15(c)(2)).  In *Mayle*, the United States Supreme Court held that "[a]n amended habeas petition ... does not relate back (and thereby escapes AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

9

A new ground does not relate back to an initial habeas petition simply because it refers to the same trial and conviction; such an approach " 'views 'occurrence' at too high a level of generality.' "  *Id*. at 661 (quoting *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000)).  An amended petition will relate back to the original petition only if both petitions "state claims that are tied to a common core of operative facts …."  *Id*. at 664.  The Supreme Court cautioned not to read the "conduct, transaction, or occurrence" requirement so broadly as to render meaningless the statute of limitations.  *Id*. at 662-64.

An ineffective assistance of counsel claim asserted in an amended petition does not relate back to an ineffective assistance of counsel claim raised in an original petition, despite having the same designation, if the two claims "do not rely on the same common core of operative facts," or if they "target separate episodes."  *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017).  If an untimely ineffective assistance of counsel claim is based on a distinct type of attorney malfeasance from a timely ineffective assistance of counsel claim, it does not relate back to the original claim.  *Id*. (citing *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)).  Thus, the Sixth Circuit has held that the claim in an amended petition that appellate counsel was ineffective in not challenging the drug amounts used to calculate the petitioner's base offense level "was an entirely new claim" from the ineffective assistance of counsel claim in the original petition

10

based on counsel's failure to challenge the petitioner's career offender enhancement. *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016); *DeMathews v. United States*, No. 18-cv-439, 2020 WL 415894, at *2 (S.D. Ohio Jan. 27, 2020) (holding that "the [defendant's] untimely ground—that counsel failed to discuss with him consecutive sentencing—is based on facts that differ in both time and type from the allegations in the original motion—that counsel erroneously told him that [the government] promised to recommend a five-year sentence if he pleaded guilty").

The ineffective assistance of counsel claims set forth in two of Defendant's proposed amended motions—the one filed on February 11, 2019 and the first-filed one on July 3, 2019—do not relate back to the ineffective assistance of counsel claims set forth in his original petition. The claims assert distinct errors in counsel's performance, albeit related to Defendant's sentence. Because the claims are therefore time-barred, the amendments would be futile. The Court is therefore denying the motions to amend that Defendant filed in conjunction with those amended petitions. (ECF Nos. 73, 75.)

The second proposed amended petition Defendant filed on July 3, 2019 (ECF No. 78) merely elaborates on grounds asserted in his original motion. The Court therefore is granting his motion to file that amendment. (ECF No. 77.)

11

### Defendant's Motion for Transcripts and Investigative Reports

Defendant filed a motion asking the Court to provide him with the plea and sentencing transcripts, all Brady and Jenks' material, any defense private investigative reports, and the grand jury transcripts and indictment. (ECF No. 53.)

Under 28 U.S.C. § 753(f), the Government must pay the fees for transcripts provided to an individual with pauper status "if the trial judge or a circuit judge certifies that the appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal." "Conclusory allegations in support of a request for free transcripts do not satisfy these requirements. *See Amadasu v. Mercy Franciscan Hosp.*, 515 F.3d 528, 530 (6th Cir. 2008) (citing *United States v. MacCollom*, 426 U.S. 317, 327 (1976) (holding a bare allegation of a claim is insufficient)). Further, "a defendant is not entitled to a transcript to search for potential grounds for relief." *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. 2000) (citing *United States v. MacCollum*, 426 U.S. 317, 325 (1976); *Bentley v. United States*, 431 F.2d 250, 254 (6th Cir. 1970)).

Similarly, as to the other documents Defendant requests:

> There is no support for the proposition that a defendant is entitled to
> … any and all documents the defendant requests for the sole purpose
> of hunting through them for issues that may be raised in an as-yet
> filed collateral challenge to the conviction. In general, with respect to
> a similar request of the government, there is no constitutional right to
> discovery in a criminal case. *United States v. Presser*, 844 F.2d 1275,
> 1281 (6th Cir. 1988).

12

*United States v. Cook*, 3 F. App'x 449, 451 (6th Cir. 2001). Additionally, absent "the most exceptional circumstances" a defendant does not have the right to grand jury materials. *Id*. (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986)).

Defendant does not identify any reason why he needs the requested records or how they will aid the Court in deciding the issues presented in his case. He has adequately asserted any claims to which the transcripts of his plea and sentencing are relevant. The Court therefore is denying his motion.

### Defendant's Request for an Evidentiary Hearing

While Defendant requests an evidentiary hearing to address his motions, the Court does not find a hearing necessary.

The court must hold an evidentiary hearing in § 2255 proceedings in which a factual dispute arises to determine the truth of the petitioner's claims. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The disputed fact must be material to necessitate a hearing. *See Taylor v. United States*, 287 F.3d 658, 660 (7th Cir. 2002); *United States v. Saucedo-Avalos*, -- Fed. App'x --, No. 2018 WL 4924599, at *3 (10th Cir. 2018). The Sixth Circuit has held that the burden to demonstrate entitlement to an evidentiary hearing "is relatively slight." *Valentine*, 488 F.3d at 333. Nevertheless, no hearing is required if " 'the record conclusively shows that

13

the petitioner is entitled to no relief.' " *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see also* 28 U.S.C. § 2255(b). "Stated another way, 'no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " *Valentine*, 488 F.3d at 333 (quoting *Arredondo*, 178 F.3d at 782).

There are no material factual disputes raised by Defendant's motion that require an evidentiary hearing. As will be discussed *infra*, the record conclusively establishes that Defendant is not entitled to relief. The Court therefore is denying Defendant's request for a hearing.

## Defendant's Motions for Appointment of Counsel

Defendant has filed two motions seeking the appointment of counsel to assist him with his § 2255 motions. (ECF Nos. 50, 72.)

A habeas petitioner does not have a constitutional right to counsel. *Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (providing that a prisoner's post-conviction right to counsel extends only to the first appeal of right and no further). If the petitioner is proceeding in forma pauperis and the interests of justice so require, a federal court has the discretion to appoint counsel for any petitioner seeking habeas relief. *See* 28 U.S.C. § 2255(g); *see also* 18 U.S.C. § 3006A(a)(2)(B). In exercising its

discretion, the court should consider the legal and factual complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). Courts have found the appointment of counsel warranted where "a petitioner has made a colorable claim, but lacks the means to adequately investigate, prepare or present the claim." *Lemeshko v.Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004) (citing *Johnson v. Howard*, 20 F. Supp. 2d 1128, 1129 (W.D. Mich. 1998)); *see also, e.g.*, *Dickens v. Chapman*, No. 17-12243, 2018 WL 20009553, at *2 (E.D. Mich. April 30, 2018) (quoting *Lemeshko*).

In his first motion to appoint counsel, Defendant fails to specify why counsel is needed. In his second motion, Defendant indicates that he needs the assistance of counsel to properly present his arguments under *Dimaya*. Defendant has sufficiently articulated the factual and legal basis for his claims, however. His various filings demonstrate that he has the ability to clearly advocate on his own behalf. Furthermore, the Court does not find the factual or legal issues to be complex, and Defendant has not articulated any other exceptional circumstances justifying the appointment of counsel.

Concluding that neither due process nor the interests of justice require the appointment of counsel, the Court is denying Defendant's motions for counsel.

15

**Standard of Review Applicable to Defendant's § 2255 Motions**

A movant is entitled to relief under § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.  In order to prevail as to alleged constitutional errors, a defendant must establish "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citation omitted).  Where the defendant alleges a non-constitutional error, he must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."  *Id*. (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

**Defendant's Challenges to the Voluntariness of His Confession
and the Search Warrant for His Home**

Defendant contests the voluntariness of his confession and the affidavit supporting the search warrant for his home.  To the extent not raised as ineffective assistance of counsel claims, however, Defendant has waived the claims by failing to raise them on direct appeal.  *See Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).

16

"Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003).  "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528.  Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented the defendant from raising the issue on direct appeal, "not ... whether counsel erred[.]" *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Defendant might argue that his plea waiver effectively barred him from pursuing claims on direct appeal.  The Sixth Circuit does not appear to have directly addressed whether a plea waiver could constitute good cause excusing procedural default.  Judges in this Circuit, however, have held that an appeal-waiver provision in a plea agreement does not provide good cause to excuse a defendant's procedural default.  *United States v. Cooper*, No. 08-cv-20464, 2012 WL 12706, at *9 (E.D. Mich. Jan. 4, 2012) (Cook, J.); *Bryant v. United States*, No. 2:06-cv-210, 2007 WL 4376099, at *5 (E.D. Tenn. Dec. 13, 2007); *Owens v. United States*, No. 4:06-cv-123, 2007 WL 1041121, at *6 (W.D. Mich. Apr. 4, 2007).  Moreover, a defendant who knowingly and voluntarily pleads guilty may

17

have difficulty demonstrating prejudice to satisfy the "cause and prejudice" exception or the "actual innocence" exception because a plea "serves as an admission that [the defendant] is not innocent of the crimes charged." *Luster v. United States*, 168 F.3d 913, 915 (6th Cir. 1999).

Defendant does not make the showings required to excuse the procedural default of his Fourth Amendment claims.  Thus the claims are waived to the extent they are independent of Defendant's ineffective assistance of counsel claims.

## Ineffective Assistance of Counsel Generally

Defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), to demonstrate that he was denied the effective assistance of trial counsel in violation of his constitutional rights.  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).  Defendant must show that: "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Id.* at 736 (citing *Strickland*, 466 U.S. at 694).  " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id*.

When evaluating counsel's performance under *Strickland*'s first step, the court must apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

18

judgment." *Strickland*, 466 U.S. at 690.  Courts should "not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors."  *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (internal quotation marks and citation omitted). Counsel's tactical decisions are presumed to be part of sound trial strategy. *Varden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

### Adjournment of Defendant's Preliminary Examination

Defendant first claims that his trial counsel provided ineffective assistance by adjourning the preliminary examination without Defendant's consent. Regardless of whether counsel's performance was deficient, Defendant does not identify any prejudice resulting from the adjournment.  Defendant's only argument appears to be that his attorney could have moved to suppress evidence at the preliminary exam.  (*See* ECF No. 58 at Pg ID 291-92.)  However, pursuant to the Federal Rules of Criminal Procedure, Defendant could not have challenged this evidence at the preliminary exam.  Fed. R. Crim. P. 5.1(e) (providing that at a preliminary exam, a defendant "may not object to evidence on the ground that it was unlawfully acquired.").

### Trial Counsel's Failure to File a Motion to Suppress Defendant's Confession

Defendant contends that his confession was obtained in violation of his Fourth Amendment rights and that trial counsel should have moved to suppress his

statements.  Specifically, Defendant maintains that he was not read *Miranda* warnings and was detained in the back of a police car, while handcuffed, for five and a half hours while questioned by police.  Defendant also claims that a police detective "lied" and said he would seek leniency from the prosecutor if Defendant provided a statement, but that Defendant otherwise would be "going away for a long long time."  Defendant asserts that he is mentally unstable, has a low mental capacity, and is easily confused and manipulated.

Before Defendant pleaded guilty, however, he claimed to have global amnesia during the period when the crimes were committed.[1]  (*See* ECF No. 31 at Pg ID 93-94.)  On that basis, trial counsel sought and obtained the assistance of a psychologist to provide testimony regarding Defendant's claimed lack of any memory of the charged offenses.  As the Government points out, it is questionable whether Defendant informed trial counsel of the circumstances surrounding his confession—which he asserts now as the basis for suppressing the confession— given that Defendant claimed at the time to have absolutely no memory from that period.

---

[1] Defendant was first arrested and provided the statements at issue to police on January 4, 2014.  (*See* Compl. ¶ 12, ECF No. 1 at Pg ID 6.)  This was two days after the date of the last robbery charged in the Superseding Indictment.  (*Id.* ¶ 8, Pg ID 5-6; *see also* Superseding Indictment at 1, ECF No. 34 at Pg ID 111.)

Even if Defendant had shared this information with his trial attorney, it is unlikely that the Court would have granted the motion.  Although Defendant is the only source of the information asserted in support of the motion, his testimony would lack credibility in light of his inconsistent claim of global amnesia.  An attorney is not ineffective for failing to pursue frivolous motions.  *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990); *Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005).  Moreover, the filing of a motion to suppress would have undermined Defendant's diminished capacity defense.

### Trial Counsel's Failure to Challenge the Warrant to Search Defendant's Residence

Defendant argues that his trial counsel was ineffective for not challenging the warrant to search Defendant's residence based on a lack of probable cause. Defendant maintains that there was an insufficient nexus between the home and evidence of the crimes.  He further argues that the affidavit in support of the search warrant contained false statements and exaggerations.  Defendant points to: (a) Torrea Wortham's[2] statement to Detective Hatfield about the keys to her car (which matched the description of the car driven by the robber in the January 2, 2014 robbery); (b) the detective's statement about the color of Defendant's

---

[2] Defendant identifies Ms. Wortham as the mother of his child.

21

brother's car (which matched the car used in another robbery)[3]; and (c) the

detective's statements about the apparent recent removal of snow from Ms.

Wortham's vehicle.  In his amended motion filed July 3, 2019, Defendant also

argues that the police used unlawfully coercive tactics when questioning Ms.

Wortham and gaining her consent to search her car.

As an initial matter, what Defendant claims Ms. Wortham told the police

(*see* ECF No. 58 at Pg ID 293) and what the affidavit reported she said (ECF No.

63-2 at Pg ID 382) are not materially different.  Both statements reflect that

Defendant had access to Ms. Wortham's car and may have used it on the day of the

January 2, 2014 robbery.  Further, Defendant lacks standing to challenge the

voluntariness of Ms. Wortham's statements to the police.[4]

There was sufficient evidence to establish a nexus between the robberies and

Defendant's residence.  A witness to the November 21, 2013 robbery believed the

four-door Cadillac vehicle with a paper license plate which was driven by the

perpetrator belonged to a customer, who the witness identified as Defendant's

mother.  The relevancy of this evidence is only minimally undermined by the fact

that the detective allegedly described the car as grey, when the car was white.  The

---

[3] The record reflects that the car Defendant's brother drove actually belonged to
their mother.  (*See* ECF No. 1 at Pg ID 3.)

[4] Defendant also lacks standing to challenge the seizure of his brother's car, which
he asserts in his motion was unlawful.  (ECF No. 58 at Pg ID 293.)

Cadillac was traced to an address in Flint, Michigan, where officers interviewed Defendant's mother the same day as the robbery.  While Defendant's mother indicated that no one had driven the car on that date, the officers also spoke with a neighbor who reported seeing the car pull into the home's driveway approximately thirty minutes after the robbery and a black male exit the vehicle.  While Defendant's brother also resided at the home, according to a records check completed by officers, Defendant's mother reported that he was in the hospital.

The car used in the January 2, 2014 robbery matched the description of Ms. Wortham's car, which was parked in front of another residence in Flint, Michigan. A Flint Police Department report reflected this as an address for Defendant and Ms. Wortham.  Like the car described by witnesses, Ms. Wortham's car did not have a license plate.  Defendant was observed by officers leaving the residence and was wearing sneakers similar to those worn by the robber.

When officers spoke with Ms. Wortham on January 2, 2014, she informed them that the driver's seat was all the way back in a way that she does not leave it when she drives.  There also was fresh snow on the floorboard.  The officers also noted that the car appeared to have been driven within the last few hours as it had been snowing for approximately the last half a day and other cars parked nearby had significant amounts of snow accumulated on them.  Ms. Wortham made a

statement to the police indicating that her car keys were left out and she could not confirm that Defendant had not driven the car.

In light of this evidence, a motion challenging the search warrant would not have been successful. Trial counsel therefore was not ineffective for failing to file such a motion.

### Counsel's Alleged Failure to Inform Defendant of the Consequences of his Plea Agreement

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Where a defendant is represented by counsel and enters a guilty plea upon counsel's advice, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 77 (1970)).

In *Hill*, the Supreme Court held that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence in *Strickland*'s first prong. *Hill*, 474 U.S. at 58-59. The *Hill* Court specifically held, however, that where the collateral challenge is to a guilty plea rather than a trial verdict, the "prejudice" prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, [the defendant]

24

would not have pleaded guilty and would have insisted on going to trial."[5]  *Id.*  The

Court emphasized the "fundamental interest in the finality of guilty pleas."  *Id.* at

58 (citing *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Defendant contends that he did not knowingly and voluntarily enter the Rule

11 Plea Agreement because his trial counsel failed to inform him of the

consequences of the plea agreement and the rights being waived, and falsely told

him that he could receive a downward departure for medical and psychiatric

reasons.  Defendant further claims that he was never told that he was waiving his

appeal rights in the agreement and the significance of waiving them.  The record

undermines Defendant's assertions.  But even if counsel erred in the manner

Defendant alleges, the record also reflects that the result of the proceedings would

not have been different.

Defendant signed the plea agreement (ECF No. 41 at Pg ID 188), which in

paragraph 3(A) expressly states:

---

[5] The Supreme Court subsequently expanded *Hill*'s prejudice prong holding. *See Rodriguez-Penton v. United States*, 905 F.3d 481, 487 (2018) (explaining the Supreme Court's varying approach to prejudice after *Hill*).  As the Supreme Court stated in *Missouri v. Frye*, 566 U.S. 134: "*Hill* was correctly decided and applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations."  *Id*. at 148.  *Frye* involved counsel's failure to inform the defendant of more favorable earlier plea offers.  This Court nevertheless concludes that *Hill*'s prejudice prong is applicable to respond to Defendant's claim concerning his plea.

the total sentence of imprisonment in this case may not be more or less than 228 months (19 years).  Specifically, the Court <u>must</u> impose a sentence of imprisonment on count one of seven (7) years imprisonment, consecutive to any other term of imprisonment.  The sentence guideline range for count two is 97-121 months.  ***However, defendant is stipulating to a sentence of 144 months on count two, which he understands to be consecutive to the sentence on count one.  Defendant understands that he is stipulating to a total sentence of 19 years (228 months). …***

(*Id.* at Pg ID 181, italics and bold in original, underlining added.)  Paragraph 7 of the agreement also plainly states that "[i]f the sentence imposed does not exceed the sentence agreed to by the parties, defendant waives the right to appeal his conviction or sentence *on any grounds*."  (*Id*. at 185, emphasis added.)  Above his signature, Defendant confirmed that he read (or was read) the entire document, understood it, and agreed to its terms.  (*Id*. at 188.)  Defendant also acknowledged his satisfaction with his attorney's advice and representation.  (*Id*.)

At the plea hearing on May 5, 2015, Defendant testified under oath that he had attended college and could read, write, and understand the English language.  (ECF No. 61 at Pg ID 306.)  Defendant further indicated that, despite being on medication, he could understand the proceedings.  (*Id*. at Pg ID 307.)  The Court then proceeded to list the rights Defendant was waiving by pleading guilty, which Defendant stated he understood.  (*Id*. at 309-312.)  The Court confirmed that Defendant had signed the plea agreement.  (*Id*. at 313.)

26

The prosecutor then read the terms of the plea agreement into the record, which included the Court's obligation to sentence Defendant to 228 months, Defendant's understanding "that he is stipulating to a total sentence of 19 years," and that he was waiving the right to file a direct appeal. (*Id*. at 317-19.) When asked if he agreed to the terms of the agreement as stated by the prosecutor, Defendant answered, "Yes." (*Id*. at Pg ID 321.) Defendant further indicated that he had not been coerced into pleading guilty and was doing so freely and voluntarily because he is guilty. (*Id*. at Pg ID 321.)

Prior to sentencing, Defendant sent letters to the Court. These correspondences did not reflect that Defendant lacked a complete understanding of the plea agreement, nor did he indicate that trial counsel failed to explain the plea agreement to him. In fact, although requesting a departure from the agreed upon sentence in his letters, Defendant acknowledged that he faced a sentence of 19 years and that the Government could withdraw from the plea agreement if the judge entered a lower sentence.

At the sentencing hearing on October 27, 2015, trial counsel indicated that he had spoken with Defendant about the risks of seeking a departure from the Court, Defendant understood that he has an agreement with the Government, and Defendant had decided to leave the sentence determination to the Court. (ECF No. 62 at Pg ID 336-37.) In addressing the Court, Defendant acknowledge that he

27

agreed to a plea for 228 months and could not ask for a downward departure (even though he also asked the Court to depart downward).  (*Id*. at Pg ID 338, 342.)

The risks to Defendant of rejecting the plea agreement were high and specifically placed on the record by the prosecutor in response to Defendant's mention of a downward departure.  (ECF No. 62 at Pg Id 332- 34.)  As the prosecutor explained, without the plea, Defendant faced the reinstatement of several additional charges from the Superseding Indictment.  (*Id*.)  Those charges carried mandatory minimum penalties, including a 25-year sentence.  (*Id*.)  The prosecutor further explained that Defendant's sentence would be over 200 years if he proceeded to trial and was found guilty on those charges.  (*Id*.)

For these reasons, the Court concludes that Defendant is not entitled to relief based on his claim that trial counsel provided ineffective assistance when advising Defendant of the plea agreement and sentence.

### Whether Defendant's Hobbs Act Conviction Qualifies as a "Crime of Violence"

Defendant maintains that the Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), entitles him to relief as his Hobbs Act conviction no longer qualifies as a "crime of violence."  The Government responds that Defendant's argument is procedurally defaulted, *Dimaya* nevertheless does not apply to 18 U.S.C. § 924(c), and Hobbs Act robbery qualifies as a predicate crime of violence under the elements clause in 18 U.S.C. § 924(c)(3)(A).  Because the

28

Court finds that Defendant's *Dimaya* argument fails on its merits, it will not discuss the Government's procedural default argument.[6]

Defendant pleaded guilty to Hobbs Act robbery in violation of 18 U.S.C. §§ 924(c)(1)(A) and 1951.  (*See* ECF No. 47 at Pg ID 250; ECF No. 41 at Pg ID 176.)  Section 924(c) authorizes heightened criminal penalties for using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," any federal "crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  The statute defines a "crime of violence" as a felony offense that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  The first subsection is referred to as the elements clause, and the second subsection is referred to as the residual clause.

---

[6] Moreover, since Defendant filed his motion, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), which extends its holding in *Dimaya* to § 924(c)'s residual clause.  The Sixth Circuit has held that "*Davis* established a 'new rule' because its 'result was not dictated by precedent existing at the time the defendant's conviction became final.' "  *In re Franklin*, 950 F.3d 909, 910 (2020) (quoting *Chaidez v. United States*, 568 U.S. 342 (2013)).  The Sixth Circuit also held that *Davis* applies retroactively to cases on collateral review.  Thus, Defendant could raise the claim despite his failure to do so before *Davis* was decided.

The Supreme Court recently held that the definition of "crime of violence" in the residual clause of § 924(c)(3) is unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). This decision expanded the Court's previous decisions in *Dimaya* and *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See Davis*, 139 S. Ct. at 2326-27; *Dimaya*, 138 S. Ct. at 1213-16. In *Johnson*, the Supreme Court held that the residual-clause definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutionally vague. 135 S. Ct. at 2563. *Dimaya* held that the definition of "crime of violence" in 18 U.S.C. § 16(b),which is a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," is unconstitutionally vague. 138 S. Ct. at 1211. In all three of these decisions, however, the Supreme Court left the statute's elements clause intact. *Davis*, 139 S. Ct. at 2325; *Dimaya*, 138 S. Ct. at 1224; *Johnson*, 135 S. Ct. at 2563; *see also United States v. Richardson*, 948 F.3d 733, 741 (6th Cir. 2020) ("*Davis* leaves intact a separate definition of crime of violence supplied by the statute's 'elements clause.' ").

Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s elements clause. *Richardson*, 948 F.3d at 741 (citing *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017)). As such, the Court rejects Defendant's argument that his conviction no longer is a crime of violence.

## Conclusion

For the reasons set forth above, Defendant's arguments in support of his motion to vacate, set aside, or correct his sentence do not entitle him to relief. Defendant cannot appeal this decision unless he first obtains a certificate of appealability under 28 U.S.C. § 2253.  See Fed. R. App. P. 22(b)(1).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  R. Governing § 2255 Cases 11(a).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires Defendant to show "that reasonable jurists could debate whether (or, for that matter, agree that) [his motions] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).   The court is satisfied that jurists of reason would not find its ruling debatable.  A certificate of appealability is therefore not warranted in this case.

Accordingly,

**IT IS ORDERED** that Defendant's motions for the appointment of counsel (ECF Nos. 50, 72) and motion for transcripts and investigative reports (ECF No. 53) are **DENIED**.

31

**IT IF FURTHER ORDERED** that Defendant's February 11, 2019 motion for leave to amend his § 2255 (ECF No. 73), and his first motion for leave to amend his motion filed July 3, 2019 (ECF No. 75) are **DENIED** and thus his corresponding amended motions (ECF Nos. 74, 76) are **STRICKEN**.

**IT IS FURTHER ORDERED** that Defendant's second July 3, 2019 motion for leave to amend his § 2255 motion (ECF No. 77) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion and amended motions to vacate, set aside, or correct sentence (ECF Nos. 58, 68, and 78) are **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 13, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 13, 2020, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager